David DONK and Michael Larocca, Plaintiffs,

Todd Pletcher and Mark Hennig, Plaintiffs–Appellees–Cross–Appellants,

v.

Deborah MILLER, individually and in her capacity as the Director of the Division of Pari–Mutuel Wagering of the Department of Business and Professional Wagering of the State of Florida and Michael Taggart, individually and in his capacity as the Hearing Officer of the Division of Pari–Mutuel Wagering of the Department of Business and Professional Wagering of the State of Florida, Defendants,

Michael Hoblock, individually and in his capacity as the Chairman of the New York State Racing and Wagering Board, Defendant–Appellant–Cross–Appellee.

No. 02–9358(L), 02–9384(XAP).

United States Court of Appeals, Second Circuit.

Argued: Oct. 17, 2003.

Decided: April 22, 2004.

Jean Lin, Assistant Solicitor General (Eliot Spitzer, Attorney General of the State of New York; Michael S. Belohlavek, Deputy Solicitor General, of counsel), New York, NY, for Defendant–Appellant–Cross–Appellee.

Mitchell A. Karlan (Malancha Chanda, David JB Arroyo, Alison C. Gooding, of counsel), Gibson, Dunn & Crutcher LLP, New York, NY, for Plaintiffs–Appellees–Cross–Appellants.

Before: OAKES, JACOBS, and POOLER, Circuit Judges.

Judge Oakes concurs in the majority opinion and in a separate concurring opinion.

JACOBS, Circuit Judge.

The New York State Racing and Wagering Board (the "Board") notified two horse trainers, Todd Pletcher and Mark Hennig ("plaintiffs"), that it intended to suspend them reciprocally because of their suspensions in Florida for racing horses that tested positive for drugs. Plaintiffs appeared before the Board and unsuccessfully challenged their impending New York suspensions. They then commenced this suit against Florida wagering officials and Michael Hoblock, chairman of the New York Board, seeking injunctive relief and monetary damages in the United States District Court for the Southern District of New York (Wood, J.).

The district court entered partial summary judgment, concluding that New York's reciprocal suspensions violated plaintiffs' due process rights; dismissing claims for damages against Hoblock on the ground that he enjoys qualified immunity in his individual and official capacities; and permanently enjoining Hoblock from "taking any action against Pletcher or Hennig on the basis of the summary suspensions issued against [them] by the State [of Florida] in May 1999."[1] Hoblock appeals from the ruling that he violated plaintiffs' due process rights and from the permanent injunction, and plaintiffs cross-appeal the ruling on qualified immunity.

We conclude that there was no violation of due process. Plaintiffs made an ad hoc appearance before the Board and contested their impending suspensions; it is therefore unnecessary to consider whether Hoblock or the Board would have violated

due process if they had suspended plaintiffs without affording them this opportunity to be heard. In the absence of any violation, the appeal of the district court's qualified immunity determination is moot. Finally, the district court's permanent injunction constituted an abuse of discretion and must be vacated.

## BACKGROUND

In April and May 1999, the State of Florida's Division of Pari–Mutuel Wagering of the Department of Business and Professional Wagering ("FDPW") summarily suspended plaintiffs and two other trainers (David Donk and Michael LaRocca), whose horses had tested positive for cocaine metabolites in mandatory post-race drug tests. *See* Fla. Stat. Ann. § 550.2415(3) (permitting summary suspensions); Fla. Admin. Code. Ann. r. 61D–6.005(1) (requiring post-race testing). The FDPW subsequently issued final orders suspending the plaintiffs and Donk (and dismissing the complaint against LaRocca). Plaintiffs do not dispute that the Florida authorities suspended them because horses they trained tested positive for illicit drugs. *See id.* r. 61D–6.002(1) ("The trainer of record shall be responsible for and be the absolute insurer of the condition of the horses or racing greyhounds, he/she enters to race.").

On May 19, 1999, the stewards at Belmont Park in New York learned that the FDPW had suspended plaintiffs, and they evidently notified the Board of these suspensions. The Board then obtained copies of the Florida suspension orders and initiated proceedings for reciprocal suspensions in New York. The New York State Steward informed plaintiffs that, barring a

---

**1.** Although the phrase "of Florida" was not included in the district court's final judgment, it was included in the court's order approving the final form of judgment. We therefore have inserted it above for clarity.

stay of the Florida suspensions, their horses would be ineligible to race in New York.

Fortuitously, a regularly scheduled Board meeting was to take place the next day. Hoping to avoid reciprocal suspensions in New York, plaintiffs asked to appear at this meeting, where they pleaded their case. No complete record of these proceedings exists, but the minutes indicate:

> The Board granted the request of [plaintiffs] to hear their statements and arguments as to why horses, trained by each, should be allowed to compete at Belmont Park, despite the summary suspension of their licenses in the State of Florida. After consideration, the Board determined to permit horses, trained by either and already entered, to participate in racing through Saturday, May 22, 1999 only, unless a stay of the Florida suspensions was obtained.

The Board essentially upheld the State Steward's decision to suspend plaintiffs, a ruling that is consistent with its view, as expressed in an affidavit by the Board's General Counsel, that reciprocity is critical to the integrity of racing. But it granted a brief stay in light of [i] the harm to the wagering public from excluding horses that already had entered in upcoming races, and [ii] the possibility that Florida would stay plaintiffs' suspensions or otherwise resolve their disputes.

Shortly thereafter, plaintiffs commenced this suit against Hoblock, seeking money damages and an injunction against reciprocal discipline. Also named as defendants were two FDPW officials ("Florida defendants"), whom plaintiffs (along with Donk and LaRocca, two other trainers who had been suspended in Florida) sued in their individual and official capacities. The Florida claims, however, were settled before the entry of final judgment and therefore are not before this Court.

The district court preliminarily enjoined the Florida defendants, by oral order on May 26, 1999 (and written order two days later), "from enforcing the suspension of the trainer's licenses of plaintiffs Pletcher and Hennig pending the final determination of plaintiffs' claims on the merits." This injunction, entered four days after the Board's stay ended, "ha[d] the [e]ffect of enjoining New York from honoring" the Florida suspensions.

The district court granted partial summary judgment on July 2, 2001, holding, *inter alia,* that Hoblock violated plaintiffs' due process rights by taking disciplinary action against them on the basis of their Florida suspensions, but that qualified immunity insulates Hoblock from liability. In an order dated March 28, 2002, the district court reconsidered and reaffirmed parts of its summary judgment decision and denied other motions for reconsideration.

A form of final judgment was approved by the court on August 22, 2002, and it was issued on August 27, 2002. The district court "permanently enjoined [Hoblock] from taking any action against [plaintiffs] on the basis of the summary suspensions issued against those plaintiffs by the State [of Florida] in May 1999." Finally, the district court denied Hoblock's motion for reconsideration under Fed R. Civ. P. 59(e) and 60(b) as well as Local Civ. R. 6.3.

## DISCUSSION

We conclude (1) that plaintiffs received due process when they were afforded an opportunity to be heard at the Board's previously scheduled meeting, and that the ruling on qualified immunity is therefore now moot; and (2) the injunction must be vacated.

## I

This Court reviews *de novo* a district court's grant of summary judgment. *E.g., Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000). We must "determine whether a genuine issue of material fact exists and whether the law was applied correctly below." *Luyando v. Grinker*, 8 F.3d 948, 950 (2d Cir.1993).

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The touchstone is "the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348–49, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Joint Anti–Fascist Comm. v. McGrath*, 341 U.S. 123, 171–72, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)); *see also Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (requiring an "opportunity to be heard ... at a meaningful time and in a meaningful manner") (internal quotations and citations omitted). Determining how much process is due entails a weighing of the [i] private interest, [ii] risk of erroneous deprivation, and [iii] public interest. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

A horse trainer possesses a property interest in his professional license; accordingly, the Board may not suspend a trainer's license in a manner that violates the Due Process Clause of the Fourteenth Amendment. *See Barry v. Barchi*, 443 U.S. 55, 64, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979). The question is whether, in this instance, the Board reciprocally suspended plaintiffs' New York licenses without sufficient process. *Barchi* involved a harness racing trainer whose horse tested positive for prohibited drug use in New York. *See*

*id.* at 59–62, 99 S.Ct. 2642. The Court acknowledged that "a trainer's interest in avoiding suspension is substantial; but the State also has an important interest in assuring the integrity of the racing carried on under its auspices." *Id.* at 64, 99 S.Ct. 2642.

The *Barchi* Court held that the absence of a pre-suspension hearing (pending a post-suspension hearing) does not violate due process so long as probable cause exists to believe the trainer's actions warrant suspension. *Id.* at 63–64, 99 S.Ct. 2642. It reasoned that where probable cause exists, "the State's interest in preserving the integrity of the sport and in protecting the public from harm becomes most acute" and that "there is substantial assurance that the trainer's interest is not being baselessly compromised." *Id.* at 65, 99 S.Ct. 2642. Because the State had probable cause to believe that Barchi's horse was drugged and that Barchi at least was negligent—the relevant standard in his case—the Court held that the State did not violate his due process rights by not conducting a pre-suspension hearing. *Id.*

In *Barchi*, the trainer's horse tested positive for drugs in New York, and the State had the benefit of the test result that supported probable cause. In the present case, however, the suspensions were purely reciprocal and taken without knowledge of whether the Florida proceedings were supported by probable cause or afforded due process. The Board did not consider whether the horses were drugged in violation of some duty owed by the trainers; rather, the Board considered, pursuant to N.Y. Rac. Pari–Mut. Wag. & Breed. Law § 213(2) ("NYRP § 213(2)"), whether plaintiffs "violated or attempted to violate any law with respect to racing in any jurisdiction." NYRP § 213(2). Application

of NYRP § 213(2) is guided by a Board regulation providing that a trainer suspended in one jurisdiction "shall not be permitted to train or ride in a race for anyone during the period of his suspension." N.Y. Comp.Codes. R. & Regs. tit. 9, § 4040.4. In addition, "[n]o horse is qualified to be entered or run which is . . . in any way under the care of . . . a person who is required to be licensed but is unlicensed, disqualified or ineligible . . . ." *Id.* § 4025.4.

We need not decide whether, in the usual course, an automatic reciprocal suspension in New York, without a hearing, would withstand constitutional scrutiny. As it happened, the Board was due to assemble for a regularly scheduled meeting the day after plaintiffs were advised of their impending suspensions; the plaintiffs sought and were granted an opportunity to be heard; the Board ordered their suspensions but granted a brief stay during which horses trained by the plaintiffs were raced; and only several days after the stay expired, plaintiffs persuaded the district court to enjoin the Board. Thus a pre-suspension hearing was had, and any post-suspension proceedings were obviated.

■ Plaintiffs contend nevertheless that they were denied the due process afforded by NYRP § 213(3), which requires that the Board either comply with specified protections or instead make a "find[ing] that public health, safety, or welfare imperatively require[d] emergency action," N.Y. Admin. Proc. Act § 401(3). The Board's failure to comply with NYRP § 213(3) arguably violated plaintiffs' rights under state law, but plaintiffs offer no persuasive ground for reading New York State's statutory requirements into the federal Due Process Clause. Moreover, the need for an extensive pre-suspension hearing would seem to be at its weakest in the context of a reciprocal suspension.

■ In short, plaintiffs were afforded an opportunity for a pre-suspension hearing, which resulted in a brief stay that was succeeded within four days by the district court's injunction. Furthermore, there is no evidence that a horse trained by either plaintiff was barred from any race. Plaintiffs therefore suffered no material injury as a result of being deprived, and we need not decide whether a reciprocal suspension without a hearing would have violated the Due Process Clause. Because Hoblock did not violate plaintiffs' due process rights, plaintiffs' appeal of the district court's qualified immunity holding is moot. *See, e.g., Dube v. State Univ. of New York,* 900 F.2d 587, 596 (2d Cir.1990).

## II

■ The imposition of a permanent injunction is reviewed for abuse of discretion, *George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1542 (2d Cir.1992), but this Court reviews *de novo* any question of mootness, *Fund for Animals v. Babbitt,* 89 F.3d 128, 132 (2d Cir.1996). For a variety of reasons, we direct vacatur of the permanent injunction.

■ 1. The injunction was predicated on the district court's conclusion that Hoblock had violated plaintiffs' due process rights. Given our ruling that process was sufficient, the principal justification for the permanent injunction—to prevent similar future (perceived) violations—is now lacking.

2. Even if we agreed with the district court that a violation occurred, the Florida defendants already have terminated plaintiffs' suspensions, dismissed with prejudice the administrative complaints against plaintiffs, and agreed to pursue no administrative, disciplinary, judicial or other action based on the pre-settlement conduct. Because the Florida suspensions have

been lifted permanently, the injunction against reciprocal suspensions arising out of the Florida suspensions is unnecessary.

3. Nothing in the record suggests that an injunction is necessary to protect plaintiffs from Hoblock. On the contrary, Hoblock acknowledges that "once the Florida racing authority dismissed its administrative complaints and all disciplinary proceedings against the plaintiffs with prejudice, the extinguished May 1999 suspensions could no longer serve as a basis for the Board's finding that the plaintiffs had violated or attempted to violate Florida's racing laws." He acknowledges also that "there was simply no possibility that the Board would give reciprocal effect, or take any action pursuant to the May 1999 Florida suspensions."

In sum, the district court's imposition of the permanent injunction constituted an abuse of discretion and must be vacated.

### CONCLUSION

For the foregoing reasons, the district court's judgment is reversed and remanded with instructions, consistent with this opinion, to dismiss plaintiffs' complaint and vacate the permanent injunction.

OAKES, Senior Circuit Judge, concurring.

Had the Florida suspensions not been lifted permanently, I would have totally agreed with Judge Wood and her approach to this case. But, under the circumstances, the injunction against reciprocal suspensions in New York is unnecessary, as Judge Jacobs's opinion holds.