**Josadac MARISCAL–SANDOVAL, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–71925.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 31, 2004.

Filed May 28, 2004.

Before HARRY PREGERSON, ROBERT R. BEEZER, and RICHARD C. TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge.

Josadac Mariscal–Sandoval, a native and citizen of Mexico, petitions for review of a final order of exclusion by the Board of Immigration Appeals ("BIA"). The BIA affirmed without opinion the Immigration Judge's ("IJ") Order, which found Mariscal Sandoval excludable from the United States for knowingly attempting to transport six undocumented aliens from Mexico into California. Mariscal–Sandoval contends that he should have been placed in deportation rather than exclusion proceedings because he had "entered" the United States within the meaning of 8 U.S.C. § 1101(a)(13) (1997).[1] We hold that Mariscal–Sandoval did not make an "entry" into the country when the Immigration and Naturalization Service ("INS")[2] failed to promptly issue him a parole extension. Because he was not entitled to deportation proceedings, we deny the petition for review.

**I**

Mariscal–Sandoval obtained lawful permanent resident status in the United States in 1992. The INS's exclusion proceedings against him arose out of an incident that occurred on May 16, 1995, at the Otay Mesa Port of Entry along the United States–Mexico border in California. The INS alleged that Mariscal–Sandoval tried to evade inspection while transporting six undocumented Mexican women into this country in his van, and it issued a notice of excludability that charged him with at-

Raul M. Montes, Montes, Montes & Montes, San Diego, CA, for the petitioner.

Theresa M. Healy, Office of Immigration Litigation, Civil Division, Los Angeles, CA, for the respondent.

1. We have addressed Mariscal–Sandoval's other arguments in a concurrently filed memorandum disposition.

2. On March 1, 2003, the Department of Justice transferred the INS's functions to the Bureau of Border Security and the Bureau of Immigration and Citizenship Services. *See* Homeland Security Act of 2002, Pub. L. No. 107–296 § 471, 116 Stat. 2135 (2002). We will refer to the relevant agency as the INS.

tempted alien smuggling under the Immigration and Nationality Act ("INA") § 212(a)(6)(E)(i), 8 U.S.C. § 1182(a)(6)(E)(i) (1995).

The issue Mariscal–Sandoval presents concerns the effect of his pre-hearing parole status in the nearly two years between his initial detention at Otay Mesa and the completion of all exclusion proceedings. He first applied for and was granted parole on May 17, 1995. From 1995 to 1997, he appeared before an IJ for several master calendar hearings. The INS set his parole to expire on the day of each hearing. After each hearing was concluded, Mariscal–Sandoval received a notice from the Immigration Court that directed him to report to the nearest INS office so the INS could re-parole him into the country:[3]

> If you are under exclusion proceedings, you are present in this country under a special permit called parole. The parole permits are issued only by the [INS] and not by this office. If your parole has expired, and you are now residing in this country, you must apply for an extension at [the local INS office]. You must apply in person and should go to that office at once. You will show the people in that office the notice which indicates your upcoming hearing date.

Following these directions, Mariscal–Sandoval reported to the local INS office after each hearing to be re-paroled. The INS then issued him an I–94 Form[4] that stated how long his parole would last until it next expired. This sequence of events recurred several times without incident during the next two years.

Of particular relevance are the events that occurred after a hearing on February 19, 1997. As he had many times before, Mariscal–Sandoval reported to the INS office after this hearing and asked to be re-paroled. However, this time he did not receive an I–94 Form or any other document. Mariscal–Sandoval alleges that an INS officer on duty told him that he must show up for his next scheduled appearance before the IJ, but that he need not carry any particular documentation to prove that he was on parole. Instead, the officer directed Mariscal–Sandoval to carry the notice for his next hearing with him and to present that notice if stopped by an immigration inspector.

At the next hearing on April 2, 1997, Mariscal–Sandoval moved to terminate the exclusion proceedings. In an affidavit, he recounted his interaction with the INS officer on February 19, 1997. He argued that the INS's failure to provide him with an I–94 Form that day meant that he had effected an "entry" into the United States and that he now should be in deportation proceedings instead of exclusion proceedings. The IJ denied the motion.

Shortly thereafter, on April 23, 1997, the INS sent Mariscal–Sandoval's attorney a notice requesting that Mariscal–Sandoval visit the San Diego office so the agency could "extend [his] I–94 (parole)[.]" The notice also informed Mariscal–Sandoval's attorney that it was the third time the INS had attempted to notify his client of its intent to extend his parole.

On May 5, 1997, the INS finally issued another I–94 Form stating that Mariscal–

---

**3.** In 1997, the District Director of the INS had exclusive jurisdiction to parole an alien into the country pursuant to 8 C.F.R. § 212.5(a). *Matter of Matelot,* 18 I. & N. Dec. 334, 336 (BIA 1982). An immigration judge did not have jurisdiction to grant parole. *Id.*

**4.** An I–94 Form is an alien arrival-departure record that serves as proof of the bearer's current immigration status and the time period during which his stay in this country is authorized. *See* 8 C.F.R. § 229.1 (1997) (prescribing the forms used by the INS).

Sandoval's parole was extended until May 14. His parole was again terminated and renewed without incident for hearings that occurred on May 14, September 11, December 11, and December 18. At the conclusion of all proceedings, the IJ issued an order of exclusion.

When Mariscal–Sandoval filed a petition for review in this court on July 1, 2002, he also requested a stay of removal. Under Ninth Circuit General Order 6.4(c)(1), this caused a temporary stay to automatically issue. The government filed a notice of non-opposition to Mariscal–Sandoval's motion. On September 9, 2002, pursuant to our local rules, a staff attorney in our Clerk's office ordered the stay of removal to be continued pending our disposition of his petition for review, or until our further order.

## II

■ We have jurisdiction pursuant to 8 U.S.C. § 1105a(a).[5] Because the BIA adopted the IJ's findings and reasoning in full, we review the IJ's opinion as the basis for the agency's decision. *Singh–Kaur v. INS*, 183 F.3d 1147, 1150 (9th Cir.1999).

■ Under the version of the INA in effect at the time of Mariscal–Sandoval's exclusion proceedings,[6] "excludable" aliens (those seeking admission from outside the United States) were entitled to fewer procedural protections than "deportable" aliens (those who had "entered" the United

States). *See Xi v. INS*, 298 F.3d 832, 838 (9th Cir.2002); *see also Landon v. Plasencia*, 459 U.S. 21, 25–27, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). Once an alien made an "entry" into the United States, lawfully or unlawfully, the relatively greater protections of deportation proceedings were required. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *see also Landon*, 459 U.S. at 30–32, 103 S.Ct. 321 (holding that the question of whether an alien has made an entry may be decided at either a deportation or exclusion hearing).

■ The determination of whether Mariscal–Sandoval was properly placed in exclusion proceedings or should have been placed in deportation proceedings thus depends upon whether he made an entry into the United States. In 1997, an entry was defined as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise[.]" INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (1997). We recently adopted the BIA's more detailed definition, which requires: "(1) a crossing into the territorial limits of the United States, *i.e.*, physical presence; (2)(a) inspection and admission by an immigration officer, or (b) actual and intentional evasion of inspection at the nearest inspection point; and (3) freedom from official restraint." *See Sidhu v. Ashcroft*, 368 F.3d 1160 (9th Cir.2004); *see also*

---

**5.** The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repealed 8 U.S.C. § 1105a and replaced it with new rules for judicial review now codified at 8 U.S.C. § 1252. *See* IIRIRA § 306(c)(1), Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), *as amended by* the Extension of Stay in the United States for Nurses Act, Pub.L. No. 104–302, 110 Stat. 3656 (Oct. 11, 1996). However, this case is governed by IIRIRA's transitional rules and we continue to have jurisdiction pursuant to 8

U.S.C. § 1105(a) because the INS commenced exclusion proceedings against Mariscal–Sandoval prior to April 1, 1997, and the final order of exclusion was entered after October 30, 1996. *See* IIRIRA § 309(c)(1).

**6.** The IIRIRA merged deportation and exclusion proceedings into the broader category of "removal" proceedings. *See Kalaw v. INS*, 133 F.3d 1147, 1149 n. 2 (9th Cir.1997).

*Matter of Patel,* 20 I. & N. Dec. 368, 370, 1991 WL 353524 (BIA 1991).

As to the third prong of the test, the BIA has held that an alien effects an entry when he comes into the United States "free from actual or constructive restraint." *Matter of Sanchez,* 17 I. & N. Dec. 218, 220 1980 WL 121869 (BIA 1980) (citations omitted). In *Matter of Sanchez*—the main authority upon which Mariscal–Sandoval relies—an alien was arrested at the border and charged with mail fraud. *Id.* at 219. He was brought into this country in INS custody, so at that time no entry was made. *Id.* at 220. However, "when he was released the following day without bond, and only on the condition that he appear for his trial on the mail charges, an entry was made. He was then free from any legal restraints imposed upon him by the immigration laws." *Id.* at 220–21. Because the alien had entered the United States at that point, the BIA held that he should be in deportation proceedings rather than exclusion proceedings.

Mariscal–Sandoval argues that he too should be placed in deportation proceedings because he entered the United States when his parole expired on February 19, 1997, and the INS released him that same day and did not issue him an I–94 Form to extend his parole until May of that year. He contends that at that point he became "free from restraint" because he was released without being re-paroled as required by 8 C.F.R. § 212.5(d)(2)(i) (1997), and the only condition on his freedom was that he appear for his continued hearing a month later. We disagree.

The Supreme Court has held that an alien's parole status was never intended to affect immigration status. *Ma v. Barber,* 357 U.S. 185, 190, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958) (noting that an alien's argument that her parole "placed her legally 'within the United States' is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court."); *see also Matter of L—Y—Y—,* 9 I. & N. Dec. 70, 1960 WL 12063 (1960) (holding that the plain language of the exclusion rule, INA § 212(d)(5), renders aliens whose parole has been terminated and who remain in the United States still subject to exclusion proceedings, not deportation proceedings).

Mariscal–Sandoval's situation differs from the alien in *Sanchez* in one key respect: unlike Sanchez, Mariscal–Sandoval was already in active exclusion proceedings when his alleged entry occurred. In contrast, Sanchez was not subject to any pending immigration proceedings, only his upcoming criminal trial on mail fraud charges. In this respect, Mariscal–Sandoval's situation is more closely analogous to our decision in *Luk v. Rosenberg,* 409 F.2d 555, 558 (9th Cir.1969). In *Luk,* an alien was paroled into the country while arrangements were made for his upcoming deportation. *Id.* at 556. A few months later, the INS revoked his parole and told him to appear for departure when notified. *Id.* That notice did not occur until two years later. *Id.*

Like Mariscal–Sandoval, Luk argued that he was no longer subject to exclusion proceedings because he had entered the country by virtue of the INS's failure to take immediate action on his case. *Id.* at 558. We squarely rejected this argument, noting that Congress did not likely intend "the mere fact of delay to improve an alien's status from that of one seeking admission to that of one legally considered within the United States." *Id.* (quoting *Rogers v. Quan,* 357 U.S. 193, 196, 78 S.Ct. 1076, 2 L.Ed.2d 1252 (1958)). In this case, the fact that the INS delayed for over two months before reinstating Mariscal–Sando-

val's parole likewise does not serve to alter his immigration status.

Finally, we note that the BIA's test for determining whether an alien has made an entry requires all three elements to be met: physical presence, inspection and admission *or* evasion of inspection at the border, and freedom from restraint. *See Patel*, 20 I. & N. Dec. at 370. Mariscal–Sandoval is physically present in this country. Even if we were to hold that he was "free from restraint" under *Sanchez*, he still cannot establish that the second prong has been met. He was never inspected and admitted in the usual manner by an immigration officer, nor did he actually succeed in evading inspection at the border. The IJ properly concluded that Mariscal–Sandoval had not made an entry and that exclusion proceedings were appropriate.

## III

■ Finally, we must address our concurring colleague's contention that we should dissolve the stay of removal immediately when this opinion is filed, rather than when the mandate is issued.

Today we deny Mariscal–Sandoval's petition for review. The concurrence reasons that this action means there is no longer a "probability of success on the merits" or any "serious legal questions." We disagree. Although it is true that "[n]othing requires the court to wait until the mandate issues[,]" Concurring Op. at 6835, Mariscal–Sandoval still retains the ability to petition this panel for rehearing, or to petition the court as a whole to review our decision en banc. Until any further petitions to this panel or the entire court are resolved, we cannot say that Mariscal–Sandoval has no probability of success on the merits.

Therefore, we believe that the better course of action is to vacate Mariscal–

Sandoval's stay when we no longer have jurisdiction over his case. Until the mandate issues, we retain jurisdiction, *see Sgaraglino v. State Farm Fire & Cas. Co.*, 896 F.2d 420, 421 (9th Cir.1990), and we are capable of modifying or rescinding today's opinion, *see United States v. Foumai*, 910 F.2d 617, 620 (9th Cir.1990). Because we have previously held that "finality of an appellate order hinges on the mandate," *id.*, we order the Clerk to vacate Mariscal–Sandoval's stay of removal when the mandate issues.

## PETITION DENIED.

BEEZER, Circuit Judge, concurring:

I join the judgment of the court.

I write separately with respect to the dissolution of the stay orders entered during the course of this appeal.

## I

Mariscal–Sandoval filed his petition for review on July 1, 2002. At that time he moved for a stay of removal pending our review of his petition. The act of filing Mariscal–Sandoval's stay motion resulted in the automatic issuance of a temporary stay order so that the court could evaluate the merits of petitioner's motion for stay.

This temporary stay procedure is established in our General Order 6.4(c). On September 9, 2002, after the government filed a notice of non-opposition to the stay motion, a staff attorney employed by this court prepared, certified and filed an order granting Mariscal–Sandoval's motion for a stay of removal *pendente lite*. Because our opinion today removes any "likelihood of success on the merits," the petitioner's allegations of fact supporting a stay now are determined to be without merit. There is no legitimate reason not to revoke Mariscal–Sandoval's stay order immediate-

ly so that the removal or deportation process can proceed as required by statute.

I discuss the application of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 to the process of granting stays in the Ninth Circuit and Congress's intent regarding stays of deportation and removal.

## II

Prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, an undocumented alien typically was granted an automatic stay of deportation upon filing a petition for review of a Board of Immigration Appeals ("BIA") decision.[1] 8 U.S.C. § 1105a(a)(3) (1994). Under this earlier statutory scheme, automatic stays were justified in most cases because a deported alien could not procedurally continue with his petition for relief. The court lost jurisdiction to review an alien's petition following his departure from the United States. 8 U.S.C. § 1105a(c) (1994) ("An order of deportation ... shall not be reviewed by any court if the alien has departed from the United States after issuance of the order.").

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 changed this rule. An alien's removal[2] no longer deprives the court of jurisdiction to consider a pending petition. As a result, Congress eliminated automatic stays in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. The statute says: "[S]ervice of the petition for review shall not stay the deportation of an alien pending the court's decision on the

petition, unless the court orders otherwise." 8 U.S.C. § 1252(b)(3)(B).

Despite Congress's statutory removal of automatic stays, the court's opinion in *De Leon v. INS*, 115 F.3d 643 (9th Cir.1997), establishes a new found basis in law for automatic *temporary* stays. The opinion says: "The filing of a motion for stay or a request for a stay contained in a petition for review will stay a petitioner's deportation temporarily until the court rules on the stay." This rule is codified in General Order 6.4(c). ("Upon the filing of a motion or request for stay of removal or deportation, the order of removal or deportation is temporarily stayed until further order of the court.") When the government files a notice of non-opposition while temporary stay is in effect, or when the court resolves a disputed motion in the alien's favor, the temporary stay is extended and "shall remain in effect during the pendency of the petition for review or until further order of the court." General Order 6.4(c)(5).

## III

Ninth Circuit opinions and rules of court never have established the standard that governs the granting of temporary stays under *De Leon* and General Order 6.4(c). The temporary stay appears to be automatic. In *Abbassi v. INS*, 143 F.3d 513 (9th Cir.1998), the court discusses the standard under which it evaluates an alien's motion for a stay of removal *after* the temporary stay is granted. The opinion holds that under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996's transitional rules, a request for a

---

**1.** We did not automatically issue stays in cases involving an alien being deported because of an aggravated felony conviction. 8 U.S.C. § 1105a(a)(3) (1994).

**2.** The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 eliminated

the previous legal distinction between deportation and removal, merging both into a broader category entitled "removal." *United States v. Lopez–Gonzalez*, 183 F.3d 933, 934–35 (9th Cir.1999).

stay is to be evaluated "under the same standards employed by district courts in evaluating motions for preliminary injunctive relief." *Id.* at 514. Specifically, an alien must show either "a probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in petitioner's favor." *Id.* (internal citations omitted).

In *Andreiu v. Ashcroft,* 253 F.3d 477 (9th Cir.2001) (en banc), the INS challenges application of the *Abbassi* rule to the permanent rules under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *Id.* at 480. The INS maintains that an alien's request for a stay is governed by 8 U.S.C. § 1252(f)(2), which states: "Notwithstanding any other provision of law, no court shall enjoin the removal of any alien pursuant to a final order under this section unless the alien shows by clear and convincing evidence that the entry of execution of such order is prohibited as a matter of law." *Andreiu* holds that § 1252(f)(2)'s use of the term "enjoin" does not refer to stays of removal and, therefore, neither § 1252(f)(2), nor its "clear and convincing evidence" standard, limits this court's power to grant stays of removal.[3] *Id.* at 480–82; *accord Arevalo v. Ashcroft,* 344 F.3d 1 (1st Cir.2003); *Mohammed v. Reno,* 309 F.3d 95 (2d Cir. 2002); *Bejjani v. INS,* 271 F.3d 670 (6th Cir.2001).

A concurring opinion in *Andreiu* questions the court's statutory construction and the resulting application of the injunction standard; the "clear and convincing evi-

dence" standard is urged. *Id.* at 485–90 (Beezer, J., concurring); *accord Weng v. Attorney General,* 287 F.3d 1335 (11th Cir. 2002) (per curiam) (holding that the "clear and convincing" standard of § 1252(f)(2) applies to motions for stays of removal pending review). *See also Kenyeres v. Ashcroft,* 538 U.S. 1301, 123 S.Ct. 1386, 155 L.Ed.2d 301 (2003) (Kennedy J., in Chambers) (discussing the conflict between the courts of appeals and need for resolution).

Although *Andreiu* does not address temporary stays specifically, the entire panel in that case agrees that a petitioner must meet some substantive standard to be entitled to a stay pending resolution of the claims of error identified in his petition. *Compare id.* at 483, *with id.* at 485. *Andreiu* thus undermines the reasoning in *De Leon.* The importance of this substantive showing requirement should not hinge on the duration of the stay in question. Automatic, standardless stays, even the temporary stays provided for under *De Leon* and by General Order 6.4(c), are contrary to case law and Congress's intent in passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996.

## IV

The court avoids Congress's intent as well by refusing to apply the "clear and convincing evidence" standard for stays expressly provided for in § 1252(f)(2). As noted above, *Andreiu* holds that the injunction standard is the appropriate standard under which to evaluate requests for

---

**3.** The tortured reading of § 1252(f)(2) has resulted in some semantical oddities. *Andreiu* holds that the definition of "enjoin" includes "to restrain by injunction" but goes on to conclude that a stay of proceedings is "very different" from an injunction and therefore not encompassed by section 1252(f)(2). 253 F.3d at 482–83 ("Put simply, injunctions run

against parties; stays run against courts and judgments."). By contrast, *Faruqi v. DHS,* 360 F.3d 985, 988 (9th Cir.2004), says that enjoin as used in § 1252(f)(2) "refers only to permanent injunctive relief and not to temporary relief such as an injunction pending appeal." (Internal quotations omitted.)

stays pending review of an alien's petition. 253 F.3d at 483. The separate opinion discusses the flaws in the court's interpretation of Congress's intent. *Id.* at 485–90.

If the traditional injunction standard is correct, then it must be applied as the law of the circuit. Under the injunction standard, an alien is entitled to a stay only so long as the petitioner can demonstrate that "either a probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in petitioners's favor." *Abbassi,* 143 F.3d at 514 (internal quotations omitted).

Once we carefully consider the administrative agency record and the parties' briefs on appeal and after oral argument or submission without argument and when an opinion is filed which denies an alien's petition for review, there necessarily is no longer "a probability of success on the merits" or any "serious legal questions." From the time of filing an opinion and thereafter, the court has no sound basis for further delaying the alien's removal or deportation. Nothing requires the court to wait until the mandate issues. General Order 6.4(c) expressly authorizes a merits panel to terminate a stay order at any time.

The proposition that a court has the authority to alter the effect of an injunction in light of changes in the law or the circumstances is well established. *See, e.g., Pasadena City Bd. of Educ. v. Spangler,* 427 U.S. 424, 437, 96 S.Ct. 2697, 49 L.Ed.2d 599 (1976); *System v. Wright,* 364 U.S. 642, 646–47, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); *United States v. Swift & Co.,* 286 U.S. 106, 114–15, 52 S.Ct. 460, 76 L.Ed. 999 (1932); *Chrysler Corp. v. United States,* 316 U.S. 556, 562, 62 S.Ct. 1146, 86 L.Ed. 1668 (1942); *Pennsylvania v. Wheeling and Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 431–32, 15 L.Ed. 435 (1855). "There is no dispute but that a sound

judicial discretion may call for the modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen." *System Federation,* 364 U.S. at 647, 81 S.Ct. 368; *see also Donk v. Miller,* 365 F.3d 159, 164–65 (2d Cir.2004) (vacating injunction because the court's determination on the merits removed the factual and legal predicates for the injunction).

## V

General Order 6.4(c) states that stays of deportation or removal remain in effect "until further order of *the court.*" (Emphasis added.) But in this case, as in many others, a Ninth Circuit staff attorney, not an Article III judge, granted petitioner's motion for a stay.

Pursuant to Ninth Circuit rules, judges need not resolve all motions. Rule 27–7, entitled Delegation of Authority to Act on Motions, provides as follows: "The Court may delegate to the Clerk or designated deputy clerks, staff attorneys, appellate commissioner or circuit mediators authority to decide motions filed with the court." Those motions delegated to the Clerk are set forth in our General Orders. General Orders, App. A. The General Orders also grant the Clerk discretion to refer certain motions to "a single judge, an appellate commissioner, a circuit court mediator, an appropriate motions attorney for presentation to a motions panel, or a merits panel." General Order 6.3; App. A.

However, nowhere in our General Orders, Circuit Rules, or anywhere else do we grant authority to the Clerk, let alone a staff attorney, to issue orders granting stays of removal. Even if our court rules could be interpreted to grant such authority, they would be in direct conflict with the language of the statute, which states that

service of the petition does not stay removal "unless *the court* orders otherwise." 8 U.S.C. § 1252(b)(3)(B) (emphasis added).

In this case, as appears to be the rule rather than the exception, the government filed a notice of non-opposition to Mariscal–Sandoval's request for a stay of removal. The government's practice, whether the result of administrative burdens or otherwise, most often results in stays being granted routinely by staff attorneys without meaningful scrutiny by any member of this court. In addition to being unauthorized, the practice of permitting staff attorneys to grant stays of removal deprives the judges of this court of an important judicial obligation established by Congress for granting due process to an ever increasing number of undocumented aliens who seek to reside in the United States as permanent residents.

## VI

The intent of Congress is best served if the effect of stays pending resolution of an appeal is maintained for the minimum necessary period of time. The circumstances, if any, under which this court should continue a stay in effect after decision are limited indeed. When the petitioner has failed to prevail on his asylum or removal claims, the time to depart has arrived and the court should vacate the stay.