**FOR PUBLICATION**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

PERSIAN BROADCAST SERVICE
GLOBAL, INC., a California
corporation,

*Plaintiff-Appellant*,

v.

MARTIN J. WALSH, Secretary of
Labor; U.S. DEPARTMENT OF
LABOR,

*Defendants-Appellees*.

No. 22-55254

D.C. No.
2:21-cv-00229-
CAS-GJS

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Submitted June 29, 2023[*]
Pasadena, California

Filed August 1, 2023

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  N. Randy Smith, Kenneth K. Lee, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge VanDyke

---

**SUMMARY**[**]

**Wages/Labor Condition Applications**

The panel affirmed the district court's summary judgment upholding an Administrative Review Board ("ARB") order awarding backpay plus pre-and post-judgment interest to Majid Varess, an Australian citizen and E-3 visa-holder who was employed as a sports reporter and producer by Persian Broadcast Service Global ("Persian Broadcast").

To employ Varess, Persian Broadcast filed and received approval for a Labor Condition Application (LCA) through the U.S. Department of Labor ("Department"), first in 2011 and again in 2013.  An LCA binds an employer to pay the required wages for the period of authorized employment, and only two exemptions can eliminate an employer's legal obligations:  when an employee is nonproductive for personal reasons or there has been a bona fide termination of the employment relationship.  20 C.F.R. § 655.731(c)(7)(ii).  In February 2015, Varess filed an administrative complaint with the Department, arguing that

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Persian Broadcast failed to pay him the full amount of his wages as specified in the two LCAs.

First, the panel held that Varess's February 2015 complaint was not time barred. The ARB reasonably relied on the LCAs rather than Varess's visa to determine the period of authorized employment and Persian Broadcast's wage obligations. By failing to pay Varess the reported wage under the second LCA period, Persian Broadcast continued to violate the wage requirement until the LCA period ended on September 12, 2015.

Second, the panel held that Varess's circumstances did not meet either of the statutory exemptions to the LCA wage requirement because, by continuing his reporting work, Varess remained in productive status and there was never a bona fide termination.

Finally, given Persian Broadcast's failure to pay Varess the LCA wages for the period of authorized employment, the ARB did not abuse its discretion by awarding backpay plus pre- and post-judgment interest.

---

**COUNSEL**

Ira J. Nasserian, Ira Nasserian A Professional Corporation, Rolling Hills Estates, California, for Plaintiff-Appellant.

Matthew J. Smock, Assistant United States Attorney; David M. Harris, Assistant United States Attorney, Civil Division Chief; E. Martin Estrada, United States Attorney; Office of the United States Attorney; Los Angeles, California; for Defendants-Appellees.

## OPINION

VANDYKE, Circuit Judge:

Appellant Persian Broadcast Service Global ("Persian Broadcast") is a Farsi language television station based in Southern California. The station employed Majid Varess, an Australian citizen and E-3 visa-holder, who worked in the United States and abroad as a sports reporter and producer. To employ Varess, Persian Broadcast filed and received approval for a Labor Condition Application (LCA) through the U.S. Department of Labor ("the Department"), first in 2011 and then again in 2013. After Persian Broadcast fell behind in paying Varess, he filed a complaint with the Department alleging that Persian Broadcast failed to pay him the appropriate wages under the LCAs. An administrative law judge (ALJ) initially denied relief, but on remand from the Administrative Review Board (ARB), found Varess's complaint timely and awarded back wages plus interest. The ARB affirmed the award, as did the district court.

Reviewing de novo, we hold that the district court did not err in finding (1) Varess's claims were not time barred; (2) Persian Broadcast had not met either of the statutory exceptions to the wage requirement; and (3) the ARB's conclusions were consistent with the law, and not arbitrary or capricious. We thus affirm the district court's decision.

## I.

Majid Varess is an Australian citizen of Iranian origin who has worked since 1974 as a sports reporter and producer. In 2011, at the age of 61, Varess came to the United States to work for Persian Broadcast.

To employ Varess in the United States, Persian Broadcast had to file for approval. First, it applied for Varess's E-3 work visa, a classification designated for specialty workers from Australia. The visa was approved. Next, Persian Broadcast filed an LCA with the Department. *See* 8 U.S.C. § 1182(t); 20 C.F.R. § 655.700. In its LCA, Persian Broadcast requested one full-time "TV producer and reporter" position for which the salary would be $45,000 per year. The Department approved the LCA for the two-year period from September 12, 2011, to September 12, 2013.

On November 23, 2011, Varess entered the United States and began working for Persian Broadcast. Over the next few years, Varess left and reentered the United States multiple times as his work assignments took him to sporting events all over the world. Reporting from England, Ireland, Belgium, France, and Australia, he covered major tennis and soccer matches for his Persian audience. Upon one of his reentries into the United States in September 2013, Customs and Border Patrol (CBP) issued an I-94 Form, which authorized him to remain in the United States until September 2015. *See Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 853 n.4 (9th Cir. 2004) ("An I–94 Form is an alien arrival-departure record that serves as proof of the bearer's current immigration status and the time period during which his stay in this country is authorized.").

When the first LCA and Varess's visa expired in September 2013, Persian Broadcast submitted a second LCA to extend Varess's employment at an annual salary of $60,000. The Department approved the second LCA for a two-year period from September 12, 2013, to September 12, 2015. Varess temporarily departed for Australia in November 2013, at which point Persian Broadcast signed a letter in support of Varess's E-3 visa renewal. Varess

continued to work for Persian Broadcast overseas until July 2014.

Throughout Varess's employment, Persian Broadcast paid him irregularly and sporadically in amounts between $300 and $2,300. Varess "came back to continue [working] with the hope that … it [was] getting better." In July 2014, Varess contacted Amir Shadjareh, the president and chief operating officer of Persian Broadcast, regarding his wages. In response, Shadjareh texted Varess that the station could no longer afford to pay him. Varess did not interpret the text as a notice of termination, but after July 14, 2014, he did not perform any more work for the company.

In all, Persian Broadcast paid Varess a total of just $20,581 for the entire period of his employment. The parties agree that Persian Broadcast failed to pay Varess the wages specified in either of the two LCAs.

On February 5, 2015, Varess filed an administrative complaint with the Department, arguing that Persian Broadcast failed to pay him the full amount of his wages as specified in the LCAs. The Department's Wage and Hour Division initially concluded that Persian Broadcast had not committed any wage violations and did not owe Varess anything. Varess appealed the decision. On appeal, the Department's ALJ issued an order denying relief. Varess filed a petition for review at the ARB, and the ARB reversed and remanded the case to the ALJ. The ALJ issued a new decision finding Varess's complaint timely and awarding back wages plus interest in the amount of $183,794. Persian Broadcast appealed, and the ARB affirmed the ALJ's award. Persian Broadcast did not contest that it did not affect a bona fide termination of Varess to the ARB, and any argument to

the contrary is forfeited. *See Welch v. Chao*, 536 F.3d 269, 279 (4th Cir. 2008).

On appeal at the district court, Persian Broadcast challenged the ARB's order under the Administrative Procedure Act (APA), arguing the complaint was not timely filed and the agency's calculation of back wages owed was arbitrary and capricious. The Department counterclaimed, seeking to enforce the payment award. At summary judgment, the district court upheld the award against Persian Broadcast, because the ARB's holdings were consistent with the text of the statute, regulations, and LCA—nothing suggested the non-renewal of an E-3 visa ended the period of authorized employment, as Persian Broadcast argued.

The district court also found that neither of the two exceptions to the payment requirement were satisfied. *See* 8 U.S.C. § 1182(t)(3)(C)(vii)(I)–(II); 20 C.F.R. § 655.731(c)(7)(i)–(ii). Persian Broadcast timely appealed to this court.

## II.

The district court's grant of summary judgment is reviewed de novo. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009). However, we review the ARB's decision pursuant to the APA. Under the APA, an agency's decision is unlawful when it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). "The scope of our review under this standard is narrow; as we have often recognized, a court is not to substitute its judgment for that of the agency." *Judulang v. Holder*, 565 U.S. 42, 52–53 (2011) (internal quotation marks and citations omitted).

## III.

The ultimate issue is whether the ARB abused its discretion by acting in an arbitrary and capricious manner in awarding back wages plus interest. The parties agree that the first LCA was enforceable, so Persian Broadcast is liable to pay the wages specified in that LCA. What Persian Broadcast disputes is whether the *second* LCA was enforceable and whether Varess timely filed his complaint.

Persian Broadcast makes two main arguments. First, it argues that the ARB's award was "arbitrary, capricious, and contrary to law" under the agency's *Manoharan* decision that was issued after the ARB's decision in this case. *See Manoharan v. HCL America, Inc.*, No. 2021-0060, 2022 WL 1469017 (ARB Apr. 14, 2022). Second, it argues that Varess failed to timely file his complaint with the Department. Neither argument is successful.

## A.

Persian Broadcast argues that the "period of authorized employment" ended—and so, too, did its wage obligations—when Varess's E-3 visa expired on September 12, 2013. Therefore, Persian Broadcast argues that the February 2015 complaint was untimely as filed more than 12 months after the latest violation. The government responds that "an E-3 visa merely authorizes travel, not employment." Instead, the government suggests that the CBP's issuance of an I-94 Form was relevant to Varess's "period of authorized employment," as it allowed Varess to be present in the United States beyond the expiration of his visa.

We need not resolve whether issuing the I-94 Form was necessary because the ARB and ALJ reasonably relied on

the LCAs to determine the "period of authorized employment." *See* 20 C.F.R. § 655.750(a).[1]

### 1.

Under the regulatory framework, an E-3 worker's "period of authorized employment" runs from the first date of employment until "the latest date indicated [in the LCA] or two years after the employment start date under the LCA, whichever comes first." 20 C.F.R. § 655.750(a)(2). It was not arbitrary for the ARB to conclude that the LCA, not the visa, determined the period of Persian Broadcast's wage obligations. Here, the second LCA authorized Varess to work from September 12, 2013, to September 12, 2015, so at the latest, Varess's "period of authorized employment" would end on September 12, 2015.

An LCA binds an employer to pay the required wages for the period of authorized employment, and only certain exemptions can eliminate an employer's legal obligations under its LCA. 20 C.F.R. § 655.731(c)(7)(ii). An employer no longer needs to pay the required wage if (1) the employee is nonproductive for personal reasons (e.g., vacation, family leave, health reasons) or (2) there has been a bona fide termination of the employment relationship, which requires a meeting of the minds—a mutual understanding that the

---

[1] In the future, the agency *could* provide guidance on whether the I-94 (in addition to the approved LCA) was essential. Here, it did not. So while the government did provide an I-94 Form here, it is unnecessary for this court to reach the question whether providing that form was required for Varess to be entitled to wages, or whether his employer and the government simply approving the LCA was sufficient. For the following reasons, we rely on the LCA's dates as the "period of authorized employment," while reserving for a future case whether the I-94 Form was required.

work relationship is over. *Id.*; *see Gupta v. Jain Software Consulting, Inc.*, No. 05-008, 2007 WL 1031365, at *4 n.3 (ARB Mar. 30, 2007).

The ARB did not abuse its discretion in finding that Varess's circumstances do not fit within one of the limited exceptions to the payment rule. First, Varess remained in "productive" status as he attended sporting events and continued his reporting work all over the world. Persian Broadcast does not argue that Varess became nonproductive. His absence from his United States-based office was in service of Persian Broadcast's work. As the ARB recognized, Varess's work required him to travel abroad on reporting assignments.

Second, there was never a bona fide termination. Persian Broadcast never informed Varess that he was being terminated. Varess's brief text exchange with Shadjareh regarding his wages was not a bona fide termination because it lacked a meeting of the minds; Varess did not interpret the message as a notice of termination. Even after Varess stopped performing work on July 14, 2014, Persian Broadcast did not terminate him. To decide that Varess's expired E-3 visa ended Persian Broadcast's wage obligation under the LCA would be to create a third, unwritten exception to the rule. When a provision contains express exceptions, "the familiar judicial maxim *expressio unius est exclusio alterius* counsels against finding additional, implied, exceptions." *Syed v. M-I, LLC*, 853 F.3d 492, 501 (9th Cir. 2017).

## 2.

Next, relying on a recent ARB decision, *Manoharan v. HCL America, Inc.*, Persian Broadcast contends that the second LCA was unenforceable because after Varess's E-3

visa expired, he was no longer authorized to work. *See* No. 2021-0060, 2022 WL 1469017 (ARB Apr. 14, 2022).[2]

But *Manoharan* is not applicable to Varess's situation. As an H-1B worker, Manoharan could not work without getting an LCA approved, submitting an H-1B "Petition" (I-129 Form), and receiving approval from U.S. Citizenship and Immigration Services (USCIS) via an I-797 Form. *Id.* at *5. Thus, in his case, the ARB based the end of the "period of authorized employment" on the end date of the H-1B visa-holder's I-129 Petition. *Id.* at *9. But this extra step is only required for those on H-1B visas—not those on an E-3. That is presumably why the agency in the *Manoharan* decision explicitly acknowledged that its "analysis applies only to the H-1B program and not to similar programs like H-1B1 and E-3." *Id.* at *5 n.49.

*Manoharan* doesn't clarify the law for this case because H-1B workers and E-3 workers face different requirements for work authorization.[3]   E-3 workers experience lower

---

[2] Persian Broadcast also argues that it is "highly unlikely" that Varess would have been issued a second E-3 visa since the consular officer would have learned that Varess had not been paid the amount promised in the original LCA.  Persian Broadcast speculates that the officer would have denied the visa application because the second LCA promised a significantly higher wage that Persian Broadcast had demonstrated by its past behavior it was unlikely to pay.  But adopting such an assumption would reward Persian Broadcast for falling short of its obligations.  This rule would incentivize bad behavior from sponsor employers who stand to benefit from underpaying nonimmigrant workers.  Moreover, Persian Broadcast explicitly supported the visa renewal that it now claims should have been denied.

[3] Even if *Manoharan* were on-point, that decision is on equal footing with the *Varess* ARB decision below.  Each is a per curiam ARB decision, so *Manoharan* is not superior or controlling. *See In the Matter*

barriers to entry because a treaty between the United States and Australia created a path to temporary employment for specialty workers.  *See* REAL ID Act of 2005, Pub. L. No. 109-13, § 501, 119 Stat. 231.  In other words, Varess falls in a unique subset of nonimmigrant workers for whom the typical H-1B requirements—including the I-129 Petition— are not applicable.

What H-1B and E-3 workers share in common, however, is the I-94 Form, which authorizes only the worker's physical *presence* in the United States.  *See Mariscal-Sandoval*, 370 F.3d at 853 n.4.  By contrast, the approved LCA is what authorizes the E-3 worker to *work* in the United States.

Accordingly, the agency's holding was not arbitrary or capricious when it found (1) the LCA's dates determined the "period of authorized employment," and (2) neither of the statutory exceptions to the LCA payment obligation applied.

## B.

By failing to pay Varess the reported wage under the second LCA period, Persian Broadcast continued to violate the requirement until the LCA period ended on September 12, 2015.  As a result, Varess's complaint in February 2015 was timely.

An aggrieved party alleging a violation of an LCA must file an administrative complaint "not later than 12 months after the latest date on which the alleged violation(s) were committed," which is "the date on which the employer allegedly failed to perform an action or fulfill a condition

---

*of Majid Varess, v. Persian Broadcast Service Global, Inc.*, No. 2020-0017, 2020 WL 4569021 (ARB July 14, 2020).

specified in the LCA[.]"  20 C.F.R. § 655.806(a)(5).  The violation "remains actionable for the duration of the employment relationship as stipulated in the LCA."  *Adm'r v. ME Global, Inc.*, No. 2016-0087, 2019 WL 3293915, at *7 (ARB Mar. 22, 2019).

Because Persian Broadcast's failure to pay the required wage was ongoing, its "latest" violation occurred at the end of the second LCA.  The limitations period had thus not even begun to run when Varess filed his complaint in February 2015.

Persian Broadcast argues that Varess's complaint was not timely because he filed it more than 12 months past the end of the first LCA.  But as explained above, the ARB properly rejected this statute of limitations argument because Varess's "period of authorized employment" ended when the second LCA expired in September 2015, not September 2013.  Thus, Varess filed his complaint well before the statutory window closed.

## C.

Given Persian Broadcast's failure to pay Varess the LCA wages for the period of authorized employment, the ARB did not abuse its discretion.  Persian Broadcast's sole argument against enforcement of the award itself is that "the size of the award will essentially force [the station] to 'close shop' and render [Varess's American counterparts] unemployed."  Persian Broadcast does not back up this policy argument with legal authority or record support.

## IV.

The agency did not abuse its discretion by awarding backpay plus pre- and post-judgment interest.  Therefore, we affirm the district court's summary judgment decision.

**AFFIRMED.**