**George GAMBELLA, Plaintiff,**

v.

**GUARDIAN INVESTOR SERVICES CORP. and John McQueen Defendants.**

**No. 98 CIV. 3328(JES).**

United States District Court,
S.D. New York.

Dec. 10, 1999.

---

Lax & Noll, New York City, Jerome Noll, of counsel, for Plaintiff.

Joshua L. Dratel, P.C., New York City, Joshua Dratel, of counsel, for Defendant Guardian Investor Services Corp.

Traub Eglin Lierberman Straus, Hawthorne, NY, Lisa L. Shrewsberry, of counsel, for Defendant John McQueen.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff George Gambella ("Gambella") alleges that defendants Guardian Investors Services Corporation ("Guardian") and John McQueen ("McQueen") violated § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) ("Section 10(b)"), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission ("SEC") 17 C.F.R. § 240.10b–5 ("Rule 10b–5"). Plaintiff also brings various state law claims, including common law fraud, negligence and breach of fiduciary duty. Defendants move to dismiss plaintiff's first amended complaint ("Am.Compl.") pursuant to Fed.R.Civ.P. 9(b) for failure to allege fraud with particularity, and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, the Court grants defendants' motion to dismiss.

## BACKGROUND

On January 8, 9, and 10, 1997, plaintiff contacted McQueen, a sales representative then-employed by Guardian, to place sell orders for 25,000 shares of stock in United Entertainment Corporation ("UENT") that were in his account. *See* Am. Compl. at ¶ 7. McQueen allegedly told plaintiff, on each occasion, that he could not execute the sell order because the UENT shares were illiquid and that there was no volume in the trading of the shares. *See id.* at ¶¶ 7, 14–15. In turn, the price of UENT fell precipitously after it was disclosed that

McQueen's former employer, Meyer, Pollack and Robbins ("MP & R"), and others, had manipulated the price of the stock and that it had little or no real value. *See id.* at ¶ 9. Plaintiff contends that McQueen failed to execute his sell order as part of the scheme to manipulate the price of UENT stock. *See id.* All of this was done so that McQueen could purportedly sell his own (and other insiders') shares prior to executing his customers' sell orders. *See id.* at ¶¶ 9, 14.

Plaintiff alleges that he did not learn that McQueen's representations regarding UENT's illiquidity were false until late November or early December 1997. *See id.* at ¶ 10. At that time, he discovered from his then-present broker that the "defendants ha[d] misle[d] him as to the liquidity of UENT, and that defendants could have executed plaintiff's sell orders if they had wished." *Id.* As a result of the defendants' misrepresentations, plaintiff contends that he suffered losses of over $100,000 because his UENT stock is now valueless. *See id.* at ¶¶ 6–7, 9.

Defendants move to dismiss plaintiff's complaint on various grounds, only one of which needs to be reached to resolve the instant motion. Defendants argue that McQueen's alleged misrepresentation regarding the illiquidity of the stock and his failure to execute plaintiff's sell order do not state a claim under Rule 10b–5 or § 10(b) because such misrepresentations were not made "in connection with a purchase or sale" of securities. *See* Memorandum in Support of Defendants' Motion to Dismiss the Complaint ("Defs' Mem.") at 17–19. The Court agrees. It follows that defendants' motion to dismiss should be granted.

## DISCUSSION

In considering a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must examine the complaint liberally, and draw all reasonable inferences in favor of the non-moving party. *See Brass v. American Film Technologies, Inc.*, 987

F.2d 142, 150 (2d Cir.1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). A claim should be dismissed only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Brass,* 987 F.2d at 150 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Here, plaintiff alleges that the defendants' failure to execute his sell orders violates Rule 10b-5. *See* Am. Compl. at ¶ 14. To state a claim under Rule 10b-5 the plaintiff must allege "that in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that [the] plaintiff's reliance on the defendant's action caused [the plaintiff] injury." *Stevelman v. Alias Research Inc.,* 174 F.3d 79, 83 (2nd Cir.1999) (quoting *Chill v. General Electric Co.,* 101 F.3d 263, 266 (2d Cir. 1996)). Defendants argue that plaintiff has not stated a claim under Rule 10b-5 because he fails to allege fraud "in connection with the purchase or sale of securities," *see* Defs' Mem. at 17–18, but instead merely complains that he was fraudulently induced to retain his UENT stock which is now valueless.

In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court held that only an actual purchaser or seller of a security may maintain a cause of action for fraud under Rule 10b-5. In so ruling, the Supreme Court adopted the bright-line rule announced by the Second Circuit in *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2d Cir.) *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), (the so-called "Birnbaum rule"), that Rule 10b-5 only protects defrauded purchasers or sellers. Both the Birnbaum rule and the Supreme Court's decision in

*Blue Chip Stamps* have been subsequently interpreted to limit suits by individuals who allege that they were induced to *retain* securities by a defendant's fraudulent conduct. *See Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1443 n. 7 (5th Cir. 1993); *Baum v. Phillips, Appel & Walden, Inc.,* 648 F.Supp. 1518, 1525 (S.D.N.Y.) *aff'd* 867 F.2d 776 (2d Cir.1989); *Gurley v. Documation, Inc.,* 674 F.2d 253, 256 (4th Cir.1982); *O'Brien v. Continental Illinois Nat'l Bank & Trust Co.,* 593 F.2d 54, 58 (7th Cir.1979); *Abrahamson v. Fleschner,* 568 F.2d 862, 868 (2d Cir.1977) ("the requirement of fraud in connection with the purchase or sale of a security is not satisfied by an allegation that plaintiffs were induced fraudulently not to sell their securities."); *Weiner v. Rooney, Pace Inc.,* No. 86 Civ. 6718, 1987 WL 11281, at \* 2 (S.D.N.Y. Feb.20, 1987) (Weinfeld, J.); *Goldman v. A.G. Becker,* No. 81 Civ. 1302, 1983 WL 1302, at \*2–3 (S.D.N.Y. Apr. 20, 1983). Notwithstanding the Supreme Court's decision in *Blue Chip Stamps,* and the overwhelming authority that has concluded that investors that are duped into retaining securities lack standing to bring suit under Rule 10b-5, plaintiff argues that his suit may proceed under the "aborted purchaser-seller exception"[1] to the Birnbaum rule.

The "aborted purchaser-seller exception" allowed investors who alleged that they were fraudulently induced to abort or delay a sale to have standing to bring suit under Rule 10b-5. *See Rich v. Touche Ross & Co.,* 415 F.Supp. 95 (S.D.N.Y. 1976); *Commerce Reporting Co. v. Puretec, Inc.,* 290 F.Supp. 715 (S.D.N.Y.1968); *See also Opper v. Hancock Securities Corp.,* 250 F.Supp. 668 (S.D.N.Y.) (holding that a broker who failed to execute a client's sell order while trading the same stock at the same time for his own account violated his duties under the 1934 Act), *aff'd,* 367 F.2d 157 (2d Cir.1966) (per cu-

---

**1.** While plaintiff does not denominate his rationale for urging the Court to not follow the Birnbaum rule, most courts and commentators that have considered the issue have used the term "aborted purchaser-seller exception" or some variation thereof. For ease of reference, the Court will us the term "aborted purchaser-seller exception."

riam).[2] Those courts that have allowed suits to proceed have done so only in those narrow cases "where the plaintiffs signify to the defendant their present intention to sell their shares and are specifically induced thereafter by a fraudulent scheme to retain their shares." *Goldman,* 1983 WL 1302, at *3 (quoting *Rich v. Touche Ross & Co.,* 415 F.Supp. at 100 (S.D.N.Y. 1976)). However, the "great weight of authority post-Blue Chip holds that a plaintiff's allegations that he was fraudulently induced to retain securities are not sufficient to state a claim." *Weiner v. Rooney, Pace Inc.,* 1987 WL 11281, at *2.

The Court agrees with those courts that have declined to recognize the continued existence of the "aborted purchaser-seller exception." Given the Supreme Court's disapproval of the "case-by-case erosion of the Birnbaum rule which would occur if exceptions to it are permitted" *Baum,* 648 F.Supp. at 1526 (internal citations omitted), the Supreme Court's more limited view of standing under Rule 10b–5, and the danger of elevating of what amounts to a run-of-the-mill action for breach of fiduciary duty into a federal securities action, the Court concludes that plaintiff does not have standing to bring this action under Rule 10b–5. Accordingly, the portion of defendants' motion to dismiss for failure to state a claim upon which relief may be granted that is directed at plaintiff's fraud claim under Rule 10b–5 shall be and hereby is granted. The only remaining claims to be considered are fraud, breach of fiduciary duty, and negligence claims under state law. Because the Court has dismissed plaintiff's sole federal claim, and no diversity exists, the Court declines to exercise jurisdiction over plaintiff's remaining claims. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

**2.** Plaintiff's reliance on the Second Circuit's decision in *Opper* is misplaced for two reasons: (1) it predates the Supreme Court's decision in *Blue Chip Stamps;* and (2) this

### CONCLUSION

For all of the reasons set forth above, defendants' motion to dismiss for failure to state claim shall be and hereby is granted and the remaining state law claims are dismissed without prejudice. The Clerk of Court is directed to enter judgment accordingly and close the above-captioned action.

It is **SO ORDERED.**

Court's decision in *Baum,* which was affirmed by the Second Circuit, held that the aborted purchaser-seller exception is "all but extinct." 648 F.Supp. at 1526.