CHAMPIONS LEAGUE,
INC., Plaintiff,

v.

Larry WOODARD, and GS Advertising
Corp., Defendants.

16 Civ. 2514 (RMB)

United States District Court,
S.D. New York.

Signed December 15, 2016

Wesley Josiah Paul, Paul K. Rooney P.C., New York, NY, for Plaintiff.

Nolan Keith Klein, Law Offices of Nolan Klein, P.A., Fort Lauderdale, FL, David Michael Goldstein, The Law Offices of David M. Goldstein, Esq., Valerie K. Ferrier, Law Offices of Nolan Klein, New York, NY, for Defendants.

## DECISION & ORDER

RICHARD M. BERMAN, United States District Judge.

## I. Background

On June 9, 2016, Champions League, Inc. ("Plaintiff" or "Champions"), a proposed professional basketball league of former and retired professional basketball players, filed an Amended Complaint against GS Advertising Corp. ("GS"), a New York advertising and promotion firm, and GS's owner. Larry Woodard ("Woodard," and collectively, "Defendants"). Plaintiff brings claims against Defendants for securities fraud, fraud in procuring a letter agreement, dated December 1, 2015 ("Letter Agreement"), conspiracy to defraud, and breach of fiduciary duty. (Am. Compl., filed June 9, 2016 ("Compl."), ¶¶ 62, 68, 74, 91.)[1]

The Complaint alleges that the Letter Agreement obligated Defendants to provide "event planning and implementation services" for Champions' inaugural basketball game, which was to be played in St. Louis on January 29, 2016, but was postponed to April 10, 2016. (Compl. 1–2.)[2] Specifically, Defendants were to "[d]evelop and execute [a] scalable ticket selling strategy," "[d]evelop [a] plan to solicit corporate sponsorships," and "[h]elp develop

---

1. In its motion papers, Plaintiff seeks leave to amend the Complaint (for a second time) to add claims for breach of contract and misappropriation of trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA"), Pub. L. No. 114–153, 130 Stat. 376(codified in scattered sections of 18 U.S.C.). See discussion at infra pp. 326–27.

2. The game was never, in fact, played. See infra pp. 319–20.

and implement [a] plan to promote [the] league in all media and digitally." (Letter Agreement, Schedule A.) In exchange, Defendants were to be paid an initial fee of $10,000, an additional $25,000 per month, and a percentage of ticket sales revenue. (Id.) Plaintiff ultimately paid Defendants a total of $177,500. (Compl. ¶ 26.)

But the inaugural game was never held. (See id. ¶ 50.) According to the Complaint, "less than two weeks ... before the St. Louis event, Plaintiff discovered that Defendants had not performed a vast majority of the agreed-upon services," including ticket-sale strategy and a plan to solicit corporate sponsorships. (Id. at 2.) Plaintiff asserts that Defendants "scheme[d] to engineer the failure of the inaugural St. Louis event almost immediately upon [their] engagement by Champions," and that Defendants "knew that if Champions had a disastrous event in St. Louis, Champions' investors would likely blame [Plaintiff's CEO]." (Id. ¶¶ 44, 46.) Defendants, presumably, would then "pick up the pieces" and "assum[e] operational control of Champions after ousting ... Champions personnel." (Id. ¶¶ 38, 41.) Defendants' "failure to perform" the Letter Agreement "forced cancellation of the St. Louis event by Champions," and, consequently, "Champions has been damaged in ticket sales, league reputation, financing, and future opportunity." (Id. ¶ 52.)

Plaintiff appears also to allege that Defendants made material misrepresentations relating to Champions League. (Id. ¶¶ 79–89.) First, Plaintiff asserts that "Defendants fraudulently represented to ... investors that [Champions League] would fail and that Woodard would then personally step in to take over operations." (Id.

¶ 79.) According to the Complaint, "[i]nvestors relied on such misrepresentations and as a result Champions was unable to raise as much capital as it otherwise could have." (Id. ¶ 82.) Second, Plaintiff alleges that Defendants "made affirmative statements to Champions that the St. Louis event was on track and would be a success." (Id. ¶ 86.) These statements allegedly caused Plaintiff to structure the company so that Plaintiff "retain[ed] a twenty (20%) interest in each [individual] League Team." (Id. ¶¶ 84, 88.) After the failure of the St. Louis event, Champions "suffered economic loss in the form of decreased value of [Plaintiff's] interest in the League Teams, and other actual business losses totaling not less than $1,177,500." (Id. ¶ 89.)

On May 26, 2016, at the parties' initial conference before the Court, Plaintiff requested leave to amend its complaint, which the Court granted. (Tr. of Proceedings, dated May 26, 2016.) Plaintiff filed its amended Complaint on June 9, 2016 and added, among other (supplemental) allegations, its theory (outlined supra p. 2) that "in the midst of a fundraising effort" "Defendants fraudulently represented to ... investors that [Champions League] would fail and that Woodard would then personally step in to take over operations." (Compl. ¶¶ 79, 81.) The amended Complaint did not include a claim of breach of the Letter Agreement.[3]

On August 31, 2016, Defendants filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules Civil Procedure. Defendants argue that "[t]his is a simple breach of contract claim, self-servingly contorted and alchemized by Plaintiff into various other

---

3. Defendants contend that "Plaintiff was on ... notice ... that this lawsuit is nothing more than an alchemized breach of contract action; yet, it did not include any breach of

contract claim when it filed the amended pleading." (Reply Mem. of Law in Support of Defs.' Mot. to Dismiss, dated September 23, 2016 ("Defs.' Reply"), at 1.)

inappropriate causes of action." (Mem. of Law in Supp. of Defs.' Mot. to Dismiss, dated Aug. 31, 2016 ("Defs.' Mem."), at 4.) Defendants contend that "[t]here is no possible basis ... to sue either of the Defendants in this case for securities violations" (id. at 10) because (1) "[i]nterest in a would-be basketball league is not a security" (id. at 11 n.9); (2) Plaintiff has not sufficiently alleged any misrepresentation in light of Federal Rule of Civil Procedure 9(b)'s "impos[ition] [of] a heightened pleading burden on fraud claims, requiring 'that a complaint ... specify the statements that the plaintiff contends were fraudulent, ... identify the speaker, ... state where and when the statements were made, and ... explain why the statements were fraudulent'" (id. at 7) (quoting Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004)); (3) "there is no allegation that Defendant[s] or Plaintiff[ ] ever bought or sold any security at all" and, a fortiori, no claim of any misrepresentation in connection with such a purchase or sale (id. at 11); and (4) Plaintiff has not adequately alleged scienter by either "alleg[ing] ... facts showing that defendants ... had both motive and opportunity to commit fraud, or ... facts constituting strong circumstantial evidence of conscious misbehavior or recklessness" (id. at 7–8 (internal quotation marks omitted)). Defendants further argue that, after dismissing the securities fraud claim, the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims because "what plaintiff is trying to do in this instance is bootstrap a 10b–5 claim to a garden variety breach of contract claim for the purposes of getting this case before the federal court." (H'rg Tr., dated July 28, 2016, at 2.)

On September 19, 2016, Plaintiff filed a memorandum of law in opposition to Defendants' motion to dismiss arguing, among other things, that (1) the interests which Champions retained in the League Teams are "Champions securities," and are subject to federal securities law (Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, dated Sept. 19, 2016 ("Pl.'s Opp'n"), at 11–12); (2) "Defendants made misrepresentations to the Plaintiff regarding the status and outlook of the St. Louis event and thereby the company itself" (id.); (3) "Champions purchased security interests in the League Teams" by "structur[ing] their League Team entities so that the Plaintiff was a security holder in the affiliated League Teams" (id. at 11–12); and (4) "Defendants ... intended for Champions to rely on misstatements so that the company would expend additional capital and subsequently fail" (id. at 11). As noted supra note 1, Plaintiff seeks leave to amend the Complaint to "inclu[de] ... additional claims under the DTSA," which "provide[s] Federal jurisdiction for the theft of trade secrets," and to assert "breaches of th[e] Letter Agreement." (Id. at 6, 12–13.)

On September 23, 2016, Defendants filed a reply. Among other things, Defendants argue that (1) Plaintiff's reference to Champions securities "does not allege anything falling under th[e] definition" of a "security" under federal law (Defs.' Reply 6); (2) Rule 9(b) is not met because, among other things, "Plaintiff ... fails to identify which statements Defendants allegedly made that turned out to be false" (id. at 2 n.1); (3) "[t]he only thing arguably sold [according to the alleged facts] w[ere] Defendants' services, and those are not 'securities'" (id. at 5); and (4) scienter is not sufficiently alleged because "Plaintiff's own allegations in the Amended Complaint confirm.... Defendants actually possessed the connections and ability to carry out the tasks for which they were hired" (id. at 3). Defendants also argue that DTSA claims are precluded because DTSA "only applies to the 'theft' of 'trade secrets' occurring on

or after [May 11, 2016]," and the allegations here describe events occurring before that date. (Id. at 7.)

**For the reasons stated below, Defendants' motion to dismiss [# 31] is granted.**

## II. Legal Standard

To state a claim for securities fraud under § 10(b) or Rule 10b–5, a Plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 37–38, 131 S.Ct. 1309, 179 L.Ed.2d 398 (2011). "[T]he mere allegation that a contractual breach involved a security does not confer standing to assert a 10b–5 action." Capital Mgmt. Select Fund Ltd. v. Bennett, 680 F.3d 214, 225–26 (2d Cir. 2012); see also McCain v. Phoenix Res., Inc., 1989 WL 146212, at *12 (S.D.N.Y. Nov. 17, 1989) ("A mere breach of contract is not a basis for section 10(b) liability.").

In order to "satisfy the *Twombly/Iqbal* plausibility standard" for stating a claim for securities fraud, a complaint must, among other things, "explain what securities were allegedly purchased." Huelbig v. Aurora Loan Servs., LLC, 2011 WL 4348281, at *7 (S.D.N.Y. May 18, 2011), adopted by, 2011 WL 4348275 (S.D.N.Y. Sept. 16, 2011). "[Federal Rule of Civil Procedure] 9(b) requires that a securities fraud claim based on misstatements must identify: (1) the allegedly fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent." Pehlivanian v. China Gerui

Advanced Materials Grp., Ltd., 153 F.Supp.3d 628, 642 (S.D.N.Y. 2015). "[F]acts asserted in [a] complaint fail[ ] to raise a strong inference of scienter [if] those facts raise[ ] no plausible inference of misrepresentation in the first place." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 177 (2d Cir. 2015).

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 727 (2d Cir. 2013) (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

A court may deny leave to amend where the "[p]laintiff[ ] ha[s] already had the opportunity to amend [its] Complaint, and … there is no indication that amendment would not be futile." MC v. Arlington Cent. Sch. Dist., 2012 WL 3020087, at *14 (S.D.N.Y. July 24, 2012).

## III. Analysis

### (1) Securities Fraud Claim

#### No Security

Defendants contend that "[t]here is no possible basis … to sue either of the Defendants in this case for securities violations" because "[i]nterest in a would-be basketball league is not a security" within the meaning of 15 U.S.C. § 77b(a)(*l*).

(Defs.' Mem. 10–11 & n.9.)[4] Plaintiff responds only that the interests Champions retained in the League Teams are "Champions securities" under federal securities law. Plaintiff fails adequately to describe such securities or to cite where they are described in the Complaint. (Pl.'s Opp'n 11.) Defendants reply (persuasively) that invoking the term "Champions securities," without more, "does not allege anything falling under th[e] definition" of a "security" under federal law. (Defs.' Reply 6.)

Plaintiff has not sufficiently alleged a "security" in this action. Huelbig, 2011 WL 4348281, at *7. In order to "satisfy the Twombly/Iqbal plausibility standard" for a claim of securities fraud, a complaint must, among other things, "explain what securities were allegedly purchased." Id. The Complaint vaguely (at best) refers to "equity offerings" (Compl. ¶¶ 7, 84), "equity fundraising" (id. ¶ 31), "equity interests" (id. ¶ 39), and "equity investors" (id. ¶ 42). But, Plaintiff does not specify a security apart from referring to "Champions securities" (Pl.'s Opp'n 11), i.e. no additional detail is alleged. Such "vague and confusing allegations ... do not satisfy the Twombly/Iqbal plausibility standard" because they do not "explain what securities were allegedly purchased." Huelbig, 2011 WL 4348281, at *7 (S.D.N.Y. May 18, 2011) (where plaintiff alleged that defendants had "add[ed] securities to his account that he did not wish to own," the court dismissed his securities fraud claim

(internal quotation marks omitted)); Duval v. Rebane, No. 99 CV 3612 FB, 2001 WL 263060, at *2 (E.D.N.Y. Mar. 14, 2001) (where plaintiff alleged that defendants "solicited investment funds," the court dismissed his securities fraud claim as "fatally conclusory" because "[n]owhere d[id] [he] allege what he received in return for his investment: he d[id] not allege that he received an interest in anything, let alone a 'note, stock, treasury stock, bond, debenture' or any of the other instruments that would qualify as a 'security' under the 1933 Act"); Liu v. L. F. Rothschild, Unterberg, Towbin, 1980 WL 1438, at *3 (S.D.N.Y. Sept. 9, 1980) (where plaintiff alleged that defendant engaged in "numerous ... uncovered option transactions," the court dismissed his securities fraud claim because a "plaintiff must identify ... the securities involved").

**No Misrepresentation**

■ Defendants also argue that Plaintiff has not sufficiently alleged any misrepresentation sufficient to satisfy of Rule 9(b)'s "heightened pleading burden on fraud claims, requiring 'that a complaint ... specify the statements that the plaintiff contends were fraudulent, ... identify the speaker, ... state where and when the statements were made, and ... explain why the statements were fraudulent.'" (Defs.' Mem. 7) (quoting Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004)). Defendants also contend that Plaintiff "fails to identify which statements Defen-

4. "The term 'security' means any note, stock, treasury stock, security future, security-based swap, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." 15 U.S.C. § 77b(a)(1).

dants allegedly made that turned out to be false." (Defs.' Reply 2 n.1.) Plaintiff (unpersuasively) responds, without citation to the Complaint, that "Defendants made misrepresentations to the Plaintiff regarding the status and outlook of the St. Louis event and thereby the company itself." (Pl.'s Opp'n 11.) Plaintiff does not quote any particular misrepresentation, much less "specify the statements that the plaintiff contends were fraudulent, . . . identify the speaker, . . . state where and when the statements were made, and . . . explain why the statements were fraudulent." See Rombach, 355 F.3d at 170.

Plaintiff has not sufficiently alleged misrepresentation(s). See Pehlivanian, 153 F.Supp.3d at 648; Hunt v. Enzo Biochem, Inc., 530 F.Supp.2d 580, 601 (S.D.N.Y. 2008). "Rule 9(b) requires that a securities fraud claim based on misstatements must identify: (1) the allegedly fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent." Pehlivanian, 153 F.Supp.3d at 642. With respect to its securities fraud claim, Plaintiff appears to endeavor to allege two misrepresentations, i.e. that "Defendants fraudulently represented to [Plaintiff's investment bank and] investors that the Company would fail" (Compl. ¶ 79), and that "Woodard and GS made affirmative statements to Champions that the St. Louis event was on track and would be a success" (id. ¶ 86). Plaintiff's allegation that Defendants said the Company would fail "fall[s] under the rubric of soft . . . projections that the Second Circuit has found cannot give rise to a securities fraud claim." See Ressler v. Liz Claiborne, Inc., 75 F.Supp.2d 43, 48 n.3, 54 (E.D.N.Y. 1998) (internal quotation marks omitted) (dismissing securities fraud claims based on statements such as "circumstances will continue to negatively impact earnings through the second quarter"), aff'd sub nom. Fishbaum v. Liz Claiborne, Inc., 189 F.3d 460 (2d Cir. 1999).

Plaintiff's allegation that Defendants misrepresented that the St. Louis event was "on track" is "insufficiently particularized under Rule 9(b) because [it] do[es] not identify any specific statements made by [Defendants]." Hunt, 530 F.Supp.2d at 601 (where "plaintiffs simply allege[d] that [individual defendant] spoke at [a] shareholders' meeting and "endorsed the progress" made by [company defendant]," "the claims against [individual defendant] must be dismissed under Rule 9(b)" because "[p]laintiffs d[id] not identify the content of [his] alleged communications, nor d[id] they specify which aspects of [the company's activities] were endorsed"). And, Plaintiff's allegation that Defendants misrepresented that the event would be a "success" is a "general statement of corporate optimism" and not a misrepresentation. See Pehlivanian, 153 F.Supp.3d at 648 (holding that plaintiff's securities fraud claim was not actionable as to defendant's "statements regarding [its] optimism that its strategies would be successful").

### No Purchase or Sale

■ Defendants argue that the Complaint does not allege securities fraud because "there is no allegation that Defendant[s] or Plaintiff[ ] ever bought or sold any security at all." (Defs.' Mem. 11.) Plaintiff responds that "Champions purchased security interests in the League Teams" by "structur[ing] their League Team entities so that the Plaintiff was a security holder in the affiliated League Teams." (Pl.'s Opp'n 11–12.) But, Defendants reply (persuasively) that "[t]he only thing arguably sold [according to the alleged facts] w[ere] Defendants' services, and those are not 'securities.'" (Defs.' Reply 5.)

Plaintiff has not alleged "misrepresentations [that] were ... made in connection with a purchase or sale of securities." See Gambella v. Guardian Inv'r Servs. Corp., 75 F.Supp.2d 297, 298 (S.D.N.Y. 1999). Plaintiff does not allege that it purchased securities but, rather, contends that it "retain[ed] a twenty percent (20%) interest in each League Team." (Compl. ¶ 84.) Plaintiff's "alleg[ation] that [it] w[as] induced to retain securities by a defendant's fraudulent conduct" does not adequately describe "a purchase or sale of securities." Gambella, 75 F.Supp.2d at 298–99 (emphasis removed) (where plaintiff "merely complain[ed] that he was fraudulently induced to retain his ... stock," court dismissed securities fraud claim because "investors that are duped into retaining securities lack standing to bring suit"); see also Abrahamson v. Fleschner, 568 F.2d 862, 868 (2d Cir. 1977) (plaintiffs' allegation that "they would have withdrawn from the firm ... if defendants had not misrepresented the true nature of the film's investments at that time" did not sustain securities fraud claim because "the requirement of fraud in connection with the purchase or sale of a security is not satisfied by an allegation that plaintiffs were induced fraudulently not to sell their securities").[5]

**No Scienter**

■ Defendants contend that Plaintiff has not alleged scienter either by "alleg[ing] ... facts showing that defendants ... had both motive and opportunity to commit fraud, or ... [by alleging] facts constituting strong circumstantial evidence of conscious misbehavior or recklessness." (Defs.' Mem. 7–8 (internal quotation marks omitted).) Plaintiff counters that "Defendants ... intended for Champions to rely on misstatements so that the company would expend additional capital and subsequently fail." (Pl.'s Opp'n 11.) Plaintiff does not cite any allegation in the Complaint to substantiate its argument. Defendants' Reply argues that "Plaintiff's own allegations in the Amended Complaint confirm.... Defendants actually possessed the connections and ability to carry out the tasks for which they were hired." (Defs.' Reply 3.)

Plaintiff has not sufficiently alleged scienter. See Loreley Fin., 797 F.3d at 177. The reason is simple: "the facts asserted in Plaintiff['s] complaint fail[ ] to raise a strong inference of scienter because those facts raise[ ] no plausible inference of misrepresentation in the first place." See discussion at supra pp. 8–10; Loreley Fin., 797 F.3d at 177 (affirming dismissal of securities fraud claim where "Plaintiffs ha[d] yet to allege a misrepresentation by [the defendant]"); see also Podgoretz v. Evans & Co., 1997 WL 138989, at *10 (E.D.N.Y. Mar. 25, 1997) (plaintiff could not prevail on his securities fraud claim because "[t]here were no misrepresentations or omissions made, and there was accordingly no wrongful knowledge or even recklessness to accompany such misrepresentations or omissions").

For the foregoing reasons, Plaintiff's securities fraud claim is dismissed.

**(2)  State–Law Claims**

Defendants argue that, after dismissing the securities fraud claim, the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims because "what plaintiff is trying to do in this instance is bootstrap a 10b–5 claim to a

---

**5.** And, "Plaintiff[ ] ha[s] not alleged that [it] ha[s] suffered any injury stemming from the offerings ... [it] did not purchase and thus ha[s] no standing" to bring claims on other investors' behalf. In re Lehman Bros. Sec. & ERISA Litig., 684 F.Supp.2d 485, 491 (S.D.N.Y. 2010) (dismissing securities fraud claims), aff'd sub nom. In re Lehman Bros. Mortg.–Backed Sec. Litig., 650 F.3d 167 (2d Cir. 2011).

garden variety breach of contract claim for the purposes of getting this case before the federal court." (H'rg Tr., dated July 28, 2016, at 2.) Plaintiff does not respond to this argument.

▪ Given the dismissal of Plaintiff's federal securities fraud claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims for fraud, conspiracy to defraud, and breach of fiduciary duty. See Cartica Mgmt., LLC v. Corpbanca, S.A., 50 F.Supp.3d 477, 497 (S.D.N.Y. 2014) ("Because [plaintiff's] federal claims are herein dismissed . . . , plaintiff's state law claims will be dismissed without prejudice."); Endico v. Fonte, 485 F.Supp.2d 411, 415 (S.D.N.Y. 2007) ("As there remains no other basis for federal jurisdiction, plaintiff's state law claims must be dismissed."). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Pension Ben., 712 F.3d at 727 (quoting Carnegie–Mellon, 484 U.S. at 350 n.7, 108 S.Ct. 614); see also 28 U.S.C. § 1367 (A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.").

### (3) Plaintiff's Request for Leave to Amend

Plaintiff seeks leave to amend (again) the Complaint to "inclu[de] . . . additional claims under the DTSA," which "provide[s] Federal jurisdiction for the theft of trade secrets." (Pl.'s Opp'n 12–13.) [6] Defendants oppose this request as futile because the DTSA "only applies to the 'theft' of 'trade secrets' occurring on or after [May 11, 2016]," and the allegations in the Complaint describe events occurring before that date. (Defs.' Reply 7.)

▪ The Court denies Plaintiff's request for leave to amend a second time. See Arlington Cent., 2012 WL 3020087, at *14. A court may deny leave to amend where the "[p]laintiff[ ] ha[s] already had the opportunity to amend [its] Complaint, and . . . there is no indication that amendment would not be futile." Id. (denying leave to amend). In this case, Plaintiff already amended its Complaint once (see Compl. at 1), and the DTSA amendments it proposes would be futile. Adding a claim under the DTSA would be futile because the DTSA "applies only to acts of misappropriation that occur on or after the date of the enactment of th[e] Act, May 11, 2016." See Syntel Sterling Best Shores Mauritius Limited v. Trizetto Group, Inc. , 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016). And, the Complaint alleges no "acts of misappropriation" on or after May 11, 2016. (See, e.g., Compl. ¶ 15 ("On November 18, 2015 [Plaintiff's CEO] met with Woodard. . . . [and] discussed, at Woodard's request, Champions' business plan[ ] [and] strategies. . . .").) Plaintiff has not "allege[d] that [Defendants] continue[ ] to use its [purported trade secrets] to directly compete with [Plaintiff]," so the alleged "wrongful act [is not treated as having] continue[d] to occur after the date of the enactment of DTSA." See Syntel, 2016 WL 5338550, at *6.

Adding a breach of contract claim would be futile here because, now that the federal claims have been dismissed, "the Court

---

**6.** Plaintiff also seeks leave to amend the Complaint to assert claims for "breaches of th[e] Letter Agreement." (Pl.'s Opp'n 6.) Defendants reply that "Plaintiff . . . did not include any breach of contract claim when it filed the amended pleading." (Defs.' Reply 1.)

would decline to exercise supplemental jurisdiction over [any] state law claims." Friedman v. JP Morgan Chase & Co. , 2016 WL 2903273, at *15 (S.D.N.Y. May 18, 2016) (holding that "[a]ny further amendment [of plaintiff's state-law claims] would be futile").[7]

## IV. Conclusion and Order

**For the reasons stated herein, Defendants' motion to dismiss [# 31] is granted.** Plaintiff's claim for securities fraud is dismissed with prejudice, and Plaintiff's state law claims are dismissed without prejudice to proceeding in state court.

The Clerk of the Court is respectfully requested to close this case.

---

7. Plaintiff may seek to pursue its breach of contract claim in state court. McRae v. Gleeson, 2016 WL 1961257, at *2 (E.D.N.Y. May 3, 2016) ("[W]hen a court declines supplemental jurisdiction in a case filed initially in federal court, it should dismiss the state-law claims without prejudice. . . . This course permits the plaintiff to refile in state court." (alterations in original)).