Rubin v EFP Rotenberg, LLP
2026 NY Slip Op 02803
May 5, 2026
Appellate Division, First Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Robert M. Rubin, Plaintiff-Respondent-Appellant,
v
EFP Rotenberg, LLP, Defendant-Appellant-Respondent.

Decided and Entered: May 05, 2026
Index No. 651825/15|Appeal No. 6540|Case No. 2025-02000|
Before: Manzanet-Daniels, J.P., Kapnick, Rodriguez, Pitt-Burke, O'Neill Levy, JJ.

Barclay Damon, LLP, New York (Michael J. Case of counsel), for appellant-respondent.
Law Offices of Kramer, LLC, New York (Edward C. Kramer of counsel), for respondent-appellant.

[*1]
Order, Supreme Court, New York County (Leslie A. Stroth, J.), entered on or about October 28, 2024, which denied defendant's motion for summary judgment dismissing the amended complaint and plaintiff's cross-motion for summary judgment, unanimously modified, on the law, to grant defendant's motion, to dismiss the amended complaint, and otherwise affirmed, without costs. The Clerk is directed to enter judgment accordingly.
Plaintiff seeks to hold defendant EFP Rotenberg, LLP (EFP), an accounting firm, liable for the loss of his loan to EFP's client, nonparty Continuity X Solutions, Inc. and Continuity X (together, Continuity). Plaintiff commenced this professional liability action against defendant alleging that but for the advice he received from defendant's former employees, he would not have invested in Continuity. Specifically, plaintiff maintains that, in 2011 and 2012, defendant and its employees misrepresented the financial condition of Continuity to plaintiff during in-person meetings, as well as in EFP's 2011 and 2012 audits of Continuity, a draft of the 2012 audit, and Continuity's Form 10Qs. Plaintiff affirmed that these oral and written misrepresentations led him to invest $300,000 in Continuity on August 24, 2012 because they showed that the company was strong and had $11 million in receivables from AT&T. Contrary to those representations, however, Continuity had significant liabilities that were not disclosed by defendant in its audits. Continuity then defaulted on its promissory note to plaintiff, eventually went bankrupt, and was investigated by the Securities and Exchange Commission.
To impose negligence liability on EFP where, as here, no privity of contract exists between plaintiff and EFP, plaintiff must demonstrate that: (1) EFP was aware that its financial reports would be used for a particular purpose or purposes; (2) plaintiff was a known party to EFP and relied on EFP's reports in furtherance of that purpose; and (3) EFP's conduct links them with plaintiff and evinces their understanding of plaintiff's reliance (see Credit Alliance Corp. v Arthur Andersen & Co., 65 NY2d 536, 551 [1985]).
[*2]
Supreme Court should have granted defendant's motion for summary judgment dismissing plaintiff's amended complaint because the record does not establish that plaintiff relied on defendant's oral and written representations to invest in Continuity (see JP Foodservice Distribs, Inc. v PricewaterhouseCoopers LLP, 33 AD3d 316, 316-317 [1st Dept 2006] [affirming the entry of summary judgment in favor of defendant where "there is no evidence of conduct on defendant's part linking it to plaintiff and evincing its understanding of plaintiff's reliance on the closing balance sheet it certified"]). First, plaintiff cannot prove that he reasonably relied on EFP's September 28, 2012 audit of Continuity because it was not finalized by EFP until after plaintiff invested in Continuity (LaSalle Natl. Bank v Ernst & Young, 285 AD2d 101, 106 [1st Dept 2001] [holding that, because the accountant had only been retained a few weeks before plaintiff increased their loan, "any contention that [plaintiff] had relied up to that time on any responsibility undertaken or statement issued by [accountant] in making its own business decisions to sharply increase financing, would be manifestly insupportable"].
Second, EFP employees' oral assurances to plaintiff in the spring and autumn of 2012 concerning Continuity's financial condition are also insufficient to establish reliance. Accountant malpractice does not extend to "a third party's reliance on alleged verbal assurances" (Lampert v Mahoney, Cohen & Co., 218 AD2d 580, 582 [1st Dept 1995]). At plaintiff's deposition, he testified that EFP's former employees did not provide him with written assurances, or any other communications, e-mails, or letters confirming what was communicated to him. He also specifically denied having seen "the drafts of any of the public filings before they were published." Yet, over two years after his deposition, in opposition to defendant's motion for summary judgment, plaintiff submitted an affidavit claiming to have relied on a draft of defendant's audit report that mentioned $11 million in receivables. Plaintiff cannot create an issue of fact by submitting an affidavit that contradicts his deposition testimony (see e.g. Kistoo v City of New York, 195 AD2d 403, 404 [1st Dept 1993]).
[*3]
Finally, plaintiff's alleged reliance on EFP's 2011 audit of Continuity and Continuity's quarterly 10Q filings with the SEC is also unavailing. The quarterly filings are accountant reviews for the periods ending December 31, 2011 and March 31, 2012. However, those two documents do not contain representations by EFP because the figures on which plaintiff relied are specifically marked "Unaudited" (see Rich v Touche Ross & Co., 414 F Supp 95, 98 [SD NY 1976], abrogated on other grounds by Gambella v Guardian Inv. Servs. Corp., 75 F Supp 2d 297, 300 [SD NY 1999]). Moreover, plaintiff could not have reasonably relied on defendant's 2011 audit of Continuity when he made his investment because that report did not reflect the $11 million in accounts receivable from AT&T, or anything approaching that figure; rather, that document listed accounts receivable of $537,879 from AT&T.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 5, 2026